**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

NATIONAL CREDIT UNION,                )
ADMINISTRATION BOARD,              )        CASE NO.  1:13CV1148
as Liquidating Agent of                    )
St. Paul Croatian Federal Credit Union, )
                                                          )
            Plaintiff,                          )
                                                          )        MAGISTRATE JUDGE GREG WHITE
        v.                                          )
                                                          )
                                                          )        **MEMORANDUM OPINION & ORDER**
                                                          )
VLADO ZOVKIC, *et al.*,                 )
                                                          )
            Defendants.                     )

Plaintiff National Credit Union Administration Board, acting in its capacity as

Liquidating Agent of St. Paul Croatian Federal Credit Union ("NCUAB") and Defendant

Huntington National Bank ("Huntington") assert claims for default on mortgage loans and for

foreclosure.  Defendant The Colony at Bratenahl ("The Colony") asserts claims based on its

allegation that it has a valid and subsisting lien on the real property at issue for outstanding and

unpaid homeowner association assessments and other charges.[1]

Currently pending before the Court are the following motions: (1) Huntington's Motion

---

[1] This case is before the Court pursuant to the consent of the parties, entered December
2, 2013.  (Doc. No. 38.)

for Summary Judgment on its foreclosure cross and counter claims (Doc. No. 117); (2) Plaintiff

NCUAB's Motion for Summary Judgment on Counts 13 and 14 of the Amended Complaint

(Doc. No. 118); and, (3) The Colony's Motion for Summary Judgment.  (Doc. No. 119.)  For the

following reasons, the motions are GRANTED.

I.     **Background**

    **A.**     **Huntington Note and Mortgage**

Huntington is the holder of an Adjustable Rate Note ("the Huntington Note") that

evidences a loan made to Defendant Vlado Zovkic on March 12, 1997 in the amount of

$655,000.[2]  *See* Affidavit of Shelley Hibburt-Gomulinski ("Hibburt-Gomulinski Aff.") at ¶ 5 and

Exh. A-1.  This Note was secured by an Open-End Mortgage ("the Huntington Mortgage")

executed by Zovkic for the property located at 352 Colony Lane, Bratenahl Village, Ohio ("the

Bratenahl Property").[3]  *Id*. at ¶ 7 and Exh. A-5.  The mortgage was recorded on March 21, 1997.

*Id.*

The Huntington Note and Mortgage require Zovkic to make monthly payments to

Huntington in repayment of the total amounts due thereunder.  *Id.* at Exhs. A-1, A-5.  Huntington

has submitted evidence that Zovkic failed to make payments as required by these loan

documents and is in default.  Specifically, Shelly Hibburt-Gomulinksi, a consumer lending

---

[2] Huntington acquired the Note at issue by merger.  (Hibburt-Gomulinski Aff. at ¶ 6.) The Note was originally held by Metropolitan Bank and Trust Company (formerly known as Metropolitan Savings Bank of Cleveland), which merged into Sky Bank.  *Id.*  Sky Bank then merged into Huntington.  *Id.*

[3] The permanent parcel numbers associated with this property are as follows: 631-08-015, 631-08-016, and 631-08-017.  The Property is also sometimes referred to as 352 Bingham Court, Bratenahl, Ohio 44108.

litigation specialist employed by Huntington, submitted an Affidavit in which she states as

follows:

> 2.    In the regular performance of my job functions and as part of my job
> responsibilities, I am familiar with, and have access to, business records
> maintained by Huntington for the purpose of servicing mortgage loans.
> These records (which include data compilations, electronically imaged
> documents, and others) are made and received and retained at or near the
> time by, or from information provided by persons with knowledge of the
> activity and transactions reflected in such records, and are made and kept
> in the course of business activity regularly conducted by Huntington.

> 3.    Specifically, I have the ability to access business records related to the
> mortgage loan (the "Zovkic loan") involving Vlado Zovkic ("Zovkic")
> that is the subject of the above-captioned action.  In connection with
> making this affidavit, I have personally examined the business records
> relating to the Zovkic loan and make this affidavit based upon my
> knowledge obtained from reviewing the business records, coupled with
> personal knowledge of this account and my familiarity with Huntington's
> mortgage loan business practices.

> \* \* \*

> 8.    According to Huntington's business records and my review, payments
> were not made as required in the Zovkic loan documents, which is term of
> default in the Zovkic loan.  Huntington held the note prior to and on the
> occurrence of the default (and thereafter).  The last payment was made in
> March 2013 and was applied to the January 2013 payment obligation.  The
> default has never been cured.  The balance due on the Zovkic loan was
> accelerated, and notice was sent to Zovkic dated April 25, 2013 by first
> class mail.

(Hibburt-Gomulinski Aff. at ¶¶ 2, 3, 8.)  Ms. Hibburt-Gomulinski also avers that "[t]he principal

balance due on said loan is $471,816.75, plus interest at the rate of 3.625% (variable) per annum

from January 1, 2013 plus late charges." *Id*. at ¶ 9.  Moreover, she states that "Huntington also

made advances (escrow) related to property taxes and insurance." *Id.*  These advances are

identified in an Exhibit attached to Ms. Hibburt-Gomulinski's Affidavit, and reflect that

Huntington has advanced a total of $101,178.67 in tax and insurance payments with respect to

the Bratenahl Property.  *Id.* at ¶ 9, Exh. A-8.

In support of its claims, Huntington submits copies of the Huntington Note and

Mortgage, as well as an April 25, 2013 notice of default letter sent to Zovkic; documentation

reflecting Zovkic's payment history with regard to the Note and Mortgage; and, Huntington's

payment history as to the property tax and insurance advances it made. (Hibburt-Gomulinski Aff.

at Exhs. A-1, A-5, A-6, A-7, and A-8.)  These documents are authenticated by Ms. Hibburt-

Gomulinski.  (Hibburt-Gomulinski Aff. at ¶ 4.)

Defendant Zovkic has not opposed Huntington's Motion and, thus, has not submitted any

evidence contrary to that set forth above.  Moreover, neither Plaintiff nor The Colony have

opposed Huntington's Motion.

**B.      St. Paul Croatian Federal Credit Union Note and Mortgage**

On March 26, 1997, Zovkic executed and delivered to St. Paul Federal Croatian Union

("St. Paul") a Balloon Note ("the St. Paul Note") in the amount of $200,000.[4]  *See* Doc. No. 43-

11, Affidavit of Russell Vardeman ("Vardeman Aff.") at ¶ 5.  This Note was secured by an

Open-End Mortgage ("the St. Paul Mortgage") executed by Zovkic for the Bratenahl Property.

*Id.*  The St. Paul Mortgage was recorded on April 17, 1997.  *Id.*

St. Paul was the original holder of the Note.  (Vardeman Aff. at ¶ 8.)  On April 30, 2010,

Plaintiff NCUAB placed St. Paul into involuntary liquidation and appointed itself Liquidating

Agent of St. Paul pursuant to 12 U.S.C. § 1787(a)(1)(A).  *See* Doc. No. 118-1; Affidavit of John

---

[4] In his Affidavit, Mr. Vardeman (a real estate analyst for Plaintiff NCUAB) avers that
the St. Paul Note "has been lost and after the exercise of due diligence cannot be located."
(Vardeman Aff. at ¶ 10.)  Defendant Zovkic does not challenge the existence or contents of the
St. Paul Note, nor does he contest that the Note was secured by the St. Paul Mortgage described
above.

4

Monk ("Monk Aff.") at ¶ 5.  Plaintiff submits that, by operation of law, it succeeded to all rights, title and interests of St. Paul.  Accordingly, Plaintiff asserts (and Zovkic does not contest) that it is now the owner and holder of the St. Paul Note and Mortgage.  (Monk Aff. at ¶ 5.)

The St. Paul Note and Mortgage require Zovkic to make monthly payments to St. Paul in repayment of the amounts due thereunder.  Plaintiff has submitted evidence that Zovkic failed to make payments as required by these documents and is in default.  Specifically, John Monk, a real estate analyst employed by Plaintiff, submitted an Affidavit in which he states as follows:

1. I am employed as a real estate analyst by the National Credit Union Administration, Asset Management and Assistance Center, an agent for Plaintiff the National Credit Union Administration Board ("Plaintiff"), in its capacity as Liquidating Agent of the St. Paul Croatian Federal Credit Union ("St. Paul").

2. I am one of [the] individuals working on the liquidation of St. Paul.  I am duly authorized to make this Affidavit and represent that I have personal knowledge of the matters contained herein, including the loan file and the loan history regarding Defendant Vlado Zovkic (the "Borrower").

     * * *

6. While the exact date of Borrower's default is not known since the Liquidating Agent has been unable to confirm any legitimate payments made by Borrower on the Note subsequent to its issuance, the Borrower certainly was and remains in default on the Note at all times after June 28, 2010, as Borrower failed to make payments on the Note subsequent to the St. Paul liquidation on April 30, 2010.  On June 28, 2010, the principal balance of the Note was in the amount of $161,323.28.

7. The account of the Borrower has been and remains in default. The Borrower has failed to pay the Note pursuant to the terms thereof, and therefore, the Note is in default.

(Monk Aff. at ¶¶ 1, 2, 6, 7.)  Mr. Monk also avers that "[a]s of September 3, 2014, the Plaintiff is owed on the Note: the principal sum of $161, 323.28 and accrued and unpaid interest in the amount of $68,562.39, plus costs, expenses and advances of $34,898.00 for a total amount due

5

on said date of $264,783.67." *Id.* at ¶ 9.  Moreover, Mr. Monk states that "Plaintiff has advanced and may continue to advance during the pendency of the within foreclosure proceedings expenses for the protection and operation of the Property, including expenses for enforcement of its rights, and other amounts due under the terms and conditions of the Note and the Mortgage including attorneys' fees." *Id.* at ¶ 11.

In a supplemental filing, Plaintiff submits evidence that, at Zovkic's request, St. Paul made advances in the amount of $137, 214.01 for payment of Zovkic's real estate taxes with respect to the Bratenahl Property.  (Doc. No. 121-1.)  Specifically, Plaintiff submitted the Affidavit of Anthony Raguz,[5] former chief operating officer of St. Paul, in which he avers as follows:

1.      From 1996 until April 2, 2010, a date immediately preceding its liquidation, I was the chief operating officer ("COO") of the former St. Paul Federal Credit Union that previously operated out of its principal location in Eastlake, Ohio ("St. Paul").  I am duly authorized to make this Affidavit and represent that I have personal knowledge of the matters contained herein.

* * *

3.      I have personal knowledge of the loans obtained by Vlado Zovkic from St.

---

[5] In September 2011, Mr. Raguz pled guilty to one count of bank fraud in violation of 18 U.S.C. § 1344; four counts of money laundering in violation of 18 U.S.C. § 1957; and, one count of receipt of commissions or gifts for procuring loans in violation of 18 U.S.C. § 215(a)(2), in connection with his role in the failure of St. Paul Croatian Federal Credit Union.  *See United States v. Raguz*, Case No. 1:11CR0008 (N.D. Ohio).  On November 27, 2013, Raguz was sentenced to 168 months incarceration and ordered to pay $71,501,823.72 in restitution.  *Id.* at Doc. No. 176.  In his Affidavit in the instant case, Mr. Raguz states that (1) he is presently incarcerated in federal prison; (2) he is "receiving no benefit and have been promised no benefit from making his affidavit;" and, (3) he has a restitution order "as a result of criminal proceedings brought by the United States of America against me resulting in my conviction and my restitution will not be reduced through any amounts recovered by the Liquidating Agent from Vlado Zovkic."  (Doc. No. 121-1 at ¶ 2.)

Paul.  Zovkic requested loans directly from me in my capacity as the COO of St. Paul, and I approved said loans.

4.      One such loan was in the initial principal amount of $200,000.00 and was secured by a second mortgage (the "Mortgage Loan") on Zovkic's real property located at 352 Colony Lane, Bratenahl, Ohio 44011 (the "Bingham House").

5.      Although Zovkic received the entire amount of $200,000.00, he never repaid the Mortgage Loan prior to April 2, 2010.

* * *

7.      Zovkic similarly requested that St. Paul advance money to pay real estate taxes that accrued with respect to the Bingham House.  Attached are checks totaling $137,214.01 that represent real estate taxes paid at the request of Zovkic.

8.      As the COO, I approved the loans used to construct, and to advance real estate taxes on, the Bingham House, as I felt it necessary to protect the property since St. Paul only obtained a second mortgage thereupon.  As the COO, I was concerned if Zovkic could not pay the real estate taxes, the Bingham House could fall into foreclosure and, among other things, St. Paul's Mortgage Loan would not get repaid.

9.      Zovkic failed to repay any of the loans he obtained, including but not limited to the Mortgage Loan.  Zovkic also failed to repay the real estate tax advances made by St. Paul to protect the asset.

(Raguz Aff. at ¶¶ 1, 3-5, 7-9.)  In support of Mr. Raguz's averments regarding the amount of tax advances paid by St. Paul with respect to the Bratenahl Property, Plaintiff attaches to Mr. Raguz's Affidavit copies of six checks totaling $137, 214.01 that are made out to the Cuyahoga County Treasurer and reference Mr. Zovkic.  (Doc. No. 121-1 at 4-9.)

In addition, on January 21, 2015, Plaintiff filed an Affidavit indicating that, since its supplemental filing, it has incurred further costs and expenses in the prosecution of its foreclosure claims in the amount of $11,295.00 through December 31, 2014.  (Doc. No. 146.) Several weeks later, on February 4, 2015, Plaintiff filed another Affidavit indicating that it has

incurred further costs and expenses in the amount of $8,032.00 since January 1, 2015.  (Doc. No. 148.)

In sum, then, Plaintiff maintains that there is due and owing under Counts 13 and 14 of the Amended Complaint the principal sum of $161,323.28, plus interest in the amount of $68,562.39, plus costs, expenses and advances in the amount of $191,439.01, for a total of $421,324.68.  (Doc. No. 148 at ¶ 6.)

Defendant Zovkic has not opposed Plaintiff's Motion and, thus, has not submitted any evidence contrary to that set forth above.  Likewise, neither Huntington nor The Colony have opposed Plaintiff's Motion.

### C.  The Colony At Bratenahl Lien

Defendant The Colony at Bratenahl ("The Colony") asserts that is a planned community as defined by Ohio Rev. Code § 5312.01 and that property owners therein are subject to a document entitled "Declaration of Covenants, Easements, and Restrictions of The Colony at Bratenahl Subdivision, Bratenahl Village, Ohio" (hereinafter "Declaration of Covenants, Easements, and Restrictions").  (Doc. No. 119 at 3.)  The Colony maintains (and Zovkic does not contest) that the Bratenahl Property is part of this planned community and is subject to the Declaration of Covenants, Easements, and Restrictions.  Defendant Zovkic also does not contest that he is the record owner of the Bratenahl Property and, as such, is subject to that Declaration.

The Colony asserts that "there are outstanding certain association assessments and maintenance fees, costs, and expenses along with attorney's fees due to The Colony from Defendant Zovkic, in the amount of at present $49,585.62, plus interest thereon at the statutory rate from August 22, 2014, plus costs of collection, and attorney's fees, accruing until the stated

8

debt is satisfied."  (Doc. No. 119 at 4.)  *See also* Affidavit of Diane Calta ("Calta Aff.") at ¶ 6. In support of this assertion, The Colony submits a "Certificate of Lien" with respect to Zovkic's Bratenahl Property, which was recorded on August 20, 2013.  (Doc. No. 119-2.)  This Certificate provides that the amount of the lien is "$10,994.44, plus interest at the statutory rate from June 1, 2012, collection costs, attorney's fees that are chargeable against the property and that remain unpaid 10 days after any portion has become due and payable **as well as any unpaid assessments occurring hereafter until this lien is satisfied**."  *Id.*  (emphasis added).

The Court also has before it a Statement that breaks down the assessments and charges comprising the current amount of The Colony's lien as follows:

| Due Date | Description | Amount |
|---|---|---|
| 01-01-11 | Assessment Fee | 5,000.00 |
| 01-01-2011 | Maintenance Fee | 700.00 |
| 01-02-2011 | Maintenance Fee-2011 | 850.00 |
| 05-01-2012 | Maintenance Fee | 4,444.44 |
| 08-22-2013 | Lien/Legal Fees | 1,375.75 |
| 10-17-2013 | Foreclosure legal costs | 403.50 |
| 12-04-2013 | Court svc, Pretrial | 288.75 |
| 12-10-2013 | Maintenance Fee (2013) | 5,571.43 |
| 03-11-2014 | Lien/Legal Fees | 535.00 |
| 05-27-2014 | Call w/Court re:new date | 25.50 |
| 06-23-2014 | Rev., analyze IRS docs | 102.00 |
| 08-18-2014 | Final ans. Hunt Bk, etc. | 293.25 |

| 09-01-2014 | Maint. Fees 2014-2015 | 30,000.00 |
|---|---|---|
| | **Balance:** | **49,589.62** |

(Doc. No. 124-2.)  Finally, The Colony has submitted additional documentation regarding the 2014-2015 $30,000 assessment fee, including a breakdown of the maintenance work comprising that fee as well as copies of a related proposal, contract, and invoice.  (Doc. Nos. 126-2 and 126-3.)

Defendant Zovkic has not opposed The Colony's Motion and, thus, has not submitted any evidence in opposition to that set forth above.  Plaintiff, however, has opposed The Colony's motion, contesting the current amount of the lien.  (Doc. No. 124.)

## II.     Standard of Review

Federal Rule of Civil Procedure 56 governs summary judgment and provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The procedure set out in Rule 56(c) requires that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion."  This can be done by citation to "materials in the record," including depositions, documents, affidavits, stipulations, and electronically stored information.  Fed. R. Civ. P. 56(c)(1)(A).  Rule 56(c)(1)(B) allows a party to "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating that there is no genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith*

10

*Radio Corp.*, 475 U.S. 574, 586-87 (1986).  "The 'mere possibility' of a factual dispute is not

enough."  *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1986).  In order to defeat a

motion for summary judgment, the non-moving party must present probative evidence that

supports its position.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).  In

determining a motion for summary judgment, the non-moving party's evidence is to be believed,

and all justifiable inferences are to be drawn in that party's favor.  *Id.* at 255.

**III.     Analysis**

    **A.     Huntington's Motion for Summary Judgment**

In its motion, Huntington seeks summary judgment on Counts 1 and 2 of its

Counterclaim and Crossclaim filed May 28, 2014.  (Doc. No. 82.)  Count 1 seeks a money

judgment against Zovkic for default of the Huntington Note and Mortgage, while Count 2 is

asserted against Plaintiff and all Defendants and seeks foreclosure of the Bratenahl Property.  *Id.*

at 7-8.  In connection with these claims, Huntington "demands Judgment against Defendant

Vlado Zovkic for the amount owing and costs; plus any amounts advanced to pay real estate

taxes, hazard insurance premiums or for property protection, plus interest thereon from the dates

of such advances; that it be found to have a first and best lien on the Property for the amount

owing, together with its advances for taxes, hazard insurance premiums or for property

protection, plus interest thereon; that all other parties' equity of redemption be foreclosed; that

all other parties be required to assert their interests in said premises or be forever barred from

asserting any interest therein; that all liens on said premises be marshaled and their priorities

determined; that said premises be sold as upon execution and the proceeds of said sale be applied

according to law; and such other relief as is just and equitable, costs; and any other legal or

equitable [relief] deemed just and appropriate by this Court." *Id*. at 8-9.

Relying on the facts set forth in Section I.A of this Opinion, Huntington argues there is no genuine issue of material fact with respect to the elements of foreclosure, and it is entitled to judgment on the Huntington Note and Mortgage.  (Doc. No. 117.)  Neither Defendant Zovkic, Plaintiff or The Colony have opposed Huntington's Motion.

A party seeking to foreclosure on a mortgage in Ohio must establish the following: (1) execution and delivery of the note and mortgage; (2) valid recording of the mortgage; (3) default on the note and mortgage; and, (4) the amount due.  *Bridge v. Ocwen Federal Bank FSB*, 2013 WL 4784292 at *4 (N.D. Ohio Sept. 6, 2013).  *See also Wells Fargo Bank, N.A. v.  Favino,* 2011 WL 1256847 at * 5 (N.D. Ohio March 31, 2011); *JP Morgan Chase Bank, N.A. v. Chiappetta,* 2013 WL 821202 at * 8 (N.D. Ohio Feb. 4. 2013); *Chase Home Finance, LLC v. Heft*, 2012 WL 691703 at *4 (Ohio App. 3d Dist. March 5, 2012); *Citizens Bank v. Cinema Park L.L.C.*, 2010 WL 420019, at *3 (N.D. Ohio Jan.29, 2010).  Moreover, "[i]t is well established under Ohio law that once a default in payment has been established under the terms of a promissory note, and the note has been accelerated, then the mortgagee is entitled to judgment." *First Merit Bank, N.A. v. Miles & Miles Group, Inc*., 2013 WL 5566229 at * 4 (N.D. Ohio July 23, 2013) (citing *Bradfield v. Hale*, 67 Ohio St. 316, 65 N.E. 1008 (1902); *McClelland v. Bishop*, 42 Ohio St. 113 (1884); *Union Central Life Ins. Co. v. Curtis*, 35 Ohio St. 357 (1880)).  *See also Gaul v. Olympia Fitness Ctr., Inc.*, 88 Ohio App.3d 310, 623 N.E.2d 1281, 1284 (Ohio App. 1993).

Here, Huntington has submitted sufficient evidence to support each of the elements of foreclosure.  Specifically, Huntington has submitted authenticated copies of the Huntington Note and Mortgage, both of which relate to the Bratenahl Property and contain Zovkic's signature.

*See* Hibburt-Gomulinski Aff. Exhs. A-1, A-5.  It has also submitted evidence that Huntington

currently holds the Huntington Note and Mortgage, and that it was the holder of these documents

when this action was filed.[6]  *Id.* at ¶ 5; Exhs. A-2, A-3, and A-4.  Moreover, the Mortgage

contains a time-stamp from the Cuyahoga County Recorder indicating that it was recorded on

March 21, 1997.  *Id.* at Exh. A-5.  Further, Huntington has submitted evidence that Zovkic failed

to make payments as required by the Huntington Note and Mortgage and, therefore, is in default.

*Id.* at ¶¶ 8-9, Exh. A-7.  It also submitted evidence that Huntington sent "Notices of Intention to

Accelerate and Foreclose" to Zovkic at two different addresses (including the Bratenahl

Property) on April 25, 2013.  *Id.* at Exh. A-6.  Zovkic does not deny receipt of these notices.

Finally, Huntington has submitted evidence that (1) the principal balance due is $471, 816.75,

plus interest at a rate of 3.625% (variable) per annum from January 1, 2013, plus late charges;

and, (2) Huntington made tax and insurance advances on the Bratenahl Property in the amount of

$101, 178.67.  *Id.* at ¶ 9; Exh. A-8.

      Zovkic has not responded to Huntington's summary judgment motion or otherwise

disputed Huntington's evidence that he has defaulted on the Huntington Note and Mortgage or

that the Bratenahl Property is subject to foreclosure.[7]  Nor has Defendant Zovkic disputed

---

[6] The Ohio Supreme Court has held that a debtor must be in possession of the note at the time of the commencement of a foreclosure action.  *Federal Home Loan Mortg. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 979 N.E.2d 1214 (2012).  Here, Huntington has submitted uncontested evidence that it merged with Sky Bank (and thereby acquired the Huntington Note and Mortgage) in September 2007, well in advance of the commencement of this action.

[7] In addition to failing to respond to Huntington's summary judgment motion, Zovkic also failed to respond to Huntington's Request for Admissions, which were served on Zovkic's counsel on June 10, 2014. (Doc. No. 117-2.) These Admissions asked Zovkic to admit, among other things, that (1) Huntington is the current holder of the Huntington Note and Mortgage; (2)

Huntington's evidence as to the amounts currently due and owing under the Huntington Note and Mortgage.  Accordingly, and because no specific facts have been presented demonstrating there is a genuine issue for trial, Huntington's Motion for Summary Judgment (Doc. No. 117) on its claim for default on the Huntington Note (Count 1) and for foreclosure of the Bratenahl Property (Count 2) is granted.

### B.      Plaintiff's Motion for Summary Judgment

In its Motion, Plaintiff seeks summary judgment on Counts 13 and 14 of its First Amended Complaint.  (Doc. No. 43.)  In Count 13, Plaintiff alleges Zovkic is in default of the St. Paul Note and seeks to collect a money judgment of the amount due thereunder.  *Id*. at ¶¶ 141-147.  In Count 14, Plaintiff alleges Zovkic executed the St. Paul Mortgage to secure payment of the Note and that "the terms and conditions of the Mortgage have been broken by reason of default in payment, and the Mortgage has become absolute."  *Id.* at ¶ 151.  Plaintiff asserts it is entitled to "enforcement of the Mortgage on the Property and payment on the Note from the proceeds of the foreclosure of the Mortgage."  *Id*.  It also claims it is entitled to payment (from the proceeds of the foreclosure) of all advances made with respect to the Bratenahl Property,

---

the Huntington Note is a genuine copy of the original Note that Zovkic signed; (3) Zovkic signed the Huntington Note and Mortgage; (4) a default occurred under the Huntington Note when Zovkic failed to make payment as required; and, (5) all payments to the subject loan have been credited or applied.  *Id.*  Pursuant to Fed. R. Civ. P. 36(a)(3), each matter set forth in Huntington's Request for Admissions is deemed admitted by virtue of Zovkic's failure to timely respond.  *See* Rule 36(a)(3) (providing that "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney.")  Matters deemed admitted pursuant to Rule 36(a) may serve as a predicate for granting a summary judgment motion.  *Bilaal v. Defiance Publ'g Co.*, 2005 WL 3817289 at * 2 (N.D. Ohio Oct. 27, 2005).

including advances for taxes, insurance premiums, and costs incurred for the protection of the Property.  *Id.* at ¶ 152.

Relying on the facts set forth in Section I.B of this Opinion, Plaintiff argues there is no genuine issue of material fact with respect to the elements of foreclosure, and that it is entitled to judgment on the St. Paul Note and Mortgage.  (Doc. No. 118.)  Neither Zovkic, Huntington or The Colony have opposed Plaintiff's Motion.

The Court finds Plaintiff has submitted sufficient evidence to support each of the elements of foreclosure.  Although it has not filed an authenticated copy of the St. Paul Note, Plaintiff did submit an Affidavit of Lost Note, in which Mr. Vardeman avers that Plaintiff is "the owner of a certain Balloon Note in the principal sum of $200,000 secured by an Open-End Mortgage executed by Vlado Zovkic on March 26, 1997 and recorded on April 17, 1997." (Vardeman Aff. at ¶ 5.)  Mr. Vardeman also states that St. Paul was the original holder of the Note and "[t]he Note or other indebtedness has been lost and after the exercise of due diligence cannot be located."  *Id.* at ¶ 10.  Zovkic does not contest that he executed the Balloon Note referenced in Mr. Vardeman's Affidavit (i.e., the St. Paul Note), or otherwise challenge the existence or validity of that Note.[8]  Thus, and in the absence of any objection or evidence to the contrary, the Court accepts Mr. Vardeman's Affidavit of Lost Note as evidence that Zovkic executed and delivered the St. Paul Note.

Plaintiff has submitted an authenticated copy of the St. Paul Mortgage, which bears

---

[8] Zovkic also does not contest that (1) St. Paul was the original holder of the St. Paul Note; (2) Plaintiff succeeded to all rights, title, and interests of St. Paul when it placed St. Paul into involuntary liquidation and appointed itself Liquidating Agent; and, therefore, (3) Plaintiff is now the owner and holder of the St. Paul Note and Mortgage.

15

Zovkic's signature and contains a time-stamp from the Cuyahoga County Recorder indicating it was recorded on April 17, 1997.  (Doc. No. 43-12.)  Further, Plaintiff has submitted evidence that Zovkic failed to make payments as required by the St. Paul Note and Mortgage and, therefore, is in default.  *See* Monk Aff. at ¶¶ 1, 2, 6, 7; Raguz Aff. at ¶¶ 1, 2, 4, 5.  Finally, Plaintiff has submitted evidence that the principal balance due is $161,323.28 with accrued and unpaid interest in the amount of $68,562.39, plus costs, expenses and advances in the amount of $191, 439.01 for a total amount due of $421,324.68.  *See* Monk Aff. at ¶ 9; Raguz Aff. at ¶ 7-9; Doc. No. 148.

Zovkic has not responded to Plaintiff's summary judgment motion or otherwise disputed Plaintiff's evidence that he is in default on the St. Paul Note and Mortgage, and that the Bratenahl Property is subject to foreclosure.  Nor has Zovkic disputed Plaintiff's evidence as to the amounts currently due and owing under the St. Paul Note and Mortgage.[9]  Accordingly, and because no specific facts have been presented demonstrating there is a genuine issue for trial, Plaintiff's Motion for Summary Judgment (Doc. No. 118) on its claim for default on the St. Paul Note (Count 13) and for foreclosure of the Bratenahl Property (Count 14) is granted.

### C.      The Colony's Motion for Summary Judgment

In its motion, The Colony seeks summary judgment with respect to its cross-claim against Defendant Zovkic for outstanding homeowners association and maintenance fees, costs and expenses, including attorney fees.  (Doc. No. 62.)  The Colony asks that it "be found to have a valid and subsisting lien" for these fees and costs "plus additional charges, penalties, interests

---

[9]  In its Motion, Plaintiff anticipates that Zovkic will raise the defense of accord and satisfaction and argues, at length, that that defense fails as a matter of law.  (Doc. No. 118 at 11-22.)  As Zovkic did not respond to Plaintiff's Motion, the Court need not reach this issue.

and costs as they continue to accrue." *Id*. at 6.  The Colony also requests that (1) all liens be marshaled and their priority determined; (2) the Bratenahl Property be ordered appraised, advertised and sold and that the sale proceeds be applied according to law; and, (3) The Colony be granted a personal judgment against Zovkic for the deficiency amount in the event the sale proceeds are not sufficient to satisfy his indebtedness to The Colony.  *Id.*

Relying on the facts set forth in Section I.C of this Opinion, The Colony argues there is no genuine issue of material fact that it has a valid and subsisting lien on the Bratenahl Property in the amount of $49,589.62,[10] plus interest at the statutory rate from August 22, 2014 plus costs of collection, and attorney's fees until the debt is satisfied.

Here, The Colony asserts it is a "planned community" as that term is defined in Ohio Revised Code §5312.01; the Bratenahl Property at issue herein is part of this planned community; and, Zovkic is the record owner of the Property.  As such, The Colony maintains Zovkic is subject to the Declaration of Covenants, Easements and Restrictions discussed *supra*. Neither Zovkic, Plaintiff, or Huntington challenge these assertions and, thus, the Court accepts them as true for purposes of The Colony's motion.

Ohio Revised Code Chapter 5312 sets forth Ohio law governing planned communities. Section 5312.10 provides as follows:

(A)(1) In accordance with its declaration, all costs the owners association incurs in the administration, governance, and maintenance of a planned community are

---

[10]  In its Motion, The Colony states that the current amount of its lien is $49,585.62. (Doc. No. 119-1 at 2.)  However, Plaintiff attaches a Statement to its Brief in Opposition which details the charges assessed to Zovkic as of August 22, 2014 as $49,589.62.  (Doc. No. 124-2 at 1.)  As the Statement constitutes a more detailed accounting of The Colony's assessments against Zovkic, the Court will presume that the balance set forth therein (i.e. $49,589.62) is the correct amount.

17

common expenses. Unless otherwise provided in the declaration, all costs of the administration, operation, maintenance, repair, and replacement of the common elements are common expenses.

(2) The common expense liability of each lot shall be allocated in accordance with the allocation set forth in the declaration. If the declaration does not establish any allocation, the common expense liability shall be allocated equally among all the lots.

(3) The board of directors shall assess the common expense liability for each lot at least annually, based on a budget the board adopts at least annually.

(B) The board shall charge interest on any past due assessment or installment at the rate the board establishes, not to exceed any maximum rate permitted by law.

In addition, Section 5312.11(A) provides that an owners association of a planned community "may assess an individual lot for any of the following: * * * (3) Costs associated with the enforcement of the declaration or the rules and regulations of the owners association, including but not limited to, attorney's fees, court costs and other expenses."  Section 5312.12(A) then provides that "[t]he owners association has a lien upon the estate or interest in any lot for the payment of any assessment or charge levied in accordance with section 5312.11 of the Revised Code, as well as any related interest, administrative late fees, enforcement assessments, collection costs, attorney's fees, and paralegal fees, that are chargeable against the lot and that remain unpaid ten days after any portion has become due and payable."

Here, The Colony has submitted evidence that it has a lien upon the Bratenahl Property for outstanding assessments, maintenance fees, costs and expenses.  This evidence consists of a Certificate of Lien (attached to The Colony's Motion as Exhibit A), that was recorded by Cuyahoga County on August 20, 2013.  (Doc. No. 119-2.)  The amount of this lien is described in the Certificate as "$10,994.44 plus interest at the statutory rate from June 1, 2012, collection costs, attorney's fees that are chargeable against the property and that remain unpaid 10 days

18

after any portion has become due and payable **as well as any unpaid assessments occurring hereafter until this lien is satisfied**." *Id.* (emphasis added).

According to Section 5312.12(B), the following applies to The Colony's lien against the Bratenahl Property:

(B) All of the following apply to a lien charged against a property pursuant to this section:

(1) **The lien is effective on the date that a certificate of lien is filed for record in the office of the recorder of the county or counties in which the lot is situated,** pursuant to authorization by the board of directors of the owners association. The certificate shall contain a description of the lot, the name of the record owner of the lot, and the amount of the unpaid assessment or charge. It shall be subscribed to by the president of the board or other designated representative of the owners association.

(2) **The lien is a continuing lien upon the lot against which each assessment or charge is made, subject to automatic subsequent adjustments reflecting any additional unpaid interest, administrative late fees, enforcement assessments, collection costs, attorney's fees, paralegal fees, and court costs**.

(3) The lien is valid for a period of five years from the date of filing, unless it is sooner released or satisfied in the same manner provided by law for the release and satisfaction of mortgages on real property or unless it is discharged by the final judgment or order of a court in an action brought to discharge the lien as provided in this section.

(4) **The lien is prior to any lien or encumbrance subsequently arising or created, except liens for real estate taxes and assessments of political subdivisions and liens of first mortgages that have been filed for record prior to the recording of the lien**, and may be foreclosed in the same manner as a mortgage on real property in an action brought by the owners association.

Ohio Rev. Code § 5312.12(B) (emphasis added).

Based on the above, the Court finds The Colony has presented sufficient evidence that it has a valid and subsisting lien with respect to the Bratenahl Property and, further, that it was properly recorded on August 20, 2013.  In addition, the Court finds there is no genuine issue of

19

material fact that the claimed assessments against Defendant Zovkic have not been paid.  Indeed, neither Zovkic, Plaintiff, or Huntington have contested the validity of The Colony's Lien or the fact that Zovkic has failed to pay the assessments claimed therein.

Plaintiff, however, has opposed The Colony's Motion with respect to the *amount* of the claimed lien.  Specifically, Plaintiff argues as follows:

> On March 6, 2014, the Colony filed its answer to the First Amended Complaint. At the time the Complaint was filed, the Colony's recorded interest was $10,994.44 and along with legal fees and maintenance costs, the amount of the lien totals $19,296.37.  The Colony lien total is evidenced by the "statement" attached to the Colony's affidavit in support of summary judgment.  However, the Colony is including maintenance fees totaling thirty thousand dollars ($30,000.00) for the years 2014 and 2015 and claiming its lien interest amounts to $49,589.62. (See affidavit in support of Colony's summary judgment motion.)  In fact, a more recent statement indicates that in addition to the $19,296.37 lien amount there is due and owing additional legal fees of $293.25 related to the foreclosure and $30,000.00 in maintenance fees for 2014-2015.  While the Liquidating Agent does not dispute the $293.25 in legal fees, it does dispute the $30,000.00 in maintenance fees for 2014-2015.

(Doc. No. 124 at 3.)  Plaintiff argues that, pursuant to the Declaration of Covenants, Easements, and Restrictions, the 2014-2015 maintenance fee should have been allocated on the basis of nineteen (19) sublots in the subdivision.[11]  Plaintiff asserts The Colony failed to do so and, therefore, improperly calculated the $30,000 fee as against Zovkic.  Plaintiff also suggests the $30,000 assessment is excessive, noting that it "greatly exceed[s]" maintenance fees charged Zovkic in 2011, 2012 and 2013.  *Id.* at 4.

In response, The Colony acknowledges that, under the original Declaration, all assessments were to be computed on the basis of nineteen (19) subplots.  However, it notes that

---

[11] Based on the record before the Court, it appears the 2014-2015 maintenance fee was in the total amount of $211,000.  (Doc. No. 126-2.)  Had this total fee been divided on the basis of 19 sublots, it would have resulted in an assessment of $11,105.26 for each sublot.

20

the Declaration has been amended several times.  It states that, pursuant to the most current

amendment (the Fourth Amendment), there are only nine (9) sublots "because several of the

sublots have been consolidated over the last twenty years." (Doc. No. 126 at 4.)  The Colony

maintains the Fourth Amendment was approved by all property owners on March 21, 2014, and

attaches a "fully executed copy" of it to its Reply Brief.  (Doc. No. 126-1.)  Based on the above,

The Colony argues it properly allocated the 2014-2015 maintenance fee among the nine (9)

remaining sublots and, therefore, correctly calculated Zovkic's $30,000 assessment.[12]

In addition, and in response to Plaintiff's argument that the 2014-2015 fee is excessive,

The Colony attaches supporting documentation regarding the repairs that necessitated this fee.

Specifically, The Colony attaches a proposal and invoice from Shoreline Contractors, Inc.

regarding a "Revetment Repair" to a part of The Colony's common area.  The Colony

"acknowledges that this shoreline expense is not a usual expense but was necessitated by

extensive storm damage to the shoreline from Hurricane Sandy on or about October 29, 2012."

(Doc. No. 126 at 6.)  It also notes that the assessment relating to the Revetment Repair represents

maintenance fees for both 2014 and 2015.  Thus, The Colony maintains that "although the most

recent maintenance fee is in excess of any of the single years prior thereto, taking into

consideration that the fee is being imposed for a budget that covers the remainder of the year

2014 and the entire year 2015; the unusual shoreline expense; and not to mention the need to

cover those fees not being collected from Mr. Zovkic, they should be seen as proper."  *Id.* at 6-7.

---

[12] In this regard, The Colony attaches documentation showing the breakdown of the 2014-2015 assessment fee among the community's nine property owners.  Seven of these property owners (including Zovkic) were assessed $30,000.  The remaining two property owners were only assessed $500 each because they have no structures on their property.  (Doc. No. 126-2 at 1-2.)

21

Upon careful review, the Court finds there is no genuine issue of material fact as to the amount of The Colony's lien.  The Colony has submitted documentation evidencing the repairs that necessitated the unusually large 2014-2015 maintenance fee, as well as the breakdown of that fee among the nine (9) sublots.  In addition, The Colony has submitted a fully executed copy of the Fourth Amendment to the Declaration of Covenants, Easements, and Restrictions, which documents the consolidation of original nineteen (19) sublots into the current nine (9) sublots, and sets forth provisions regarding the allocation of assessments among these lots.  (Doc. No. 126-1.)  Moreover, the Court notes that, during an in-person conference with the Court on November 5, 2014, counsel for Plaintiff conceded that, based on documentation submitted by The Colony in support of its Reply Brief, no genuine issues of material fact remain with respect to this issue.

Plaintiff also argues, however, that "the entire portion of the 2014 and 2015 thirty thousand dollar ($30,000) maintenance fee represents additional <u>unrecorded</u> and improperly computed liens that Colony has failed to record with the Cuyahoga County Recorder and, therefore, are barred by the doctrine of *lis pendens*."  (Doc. No. 124 at 5.)  It argues that "[t]he only Colony lien <u>recorded</u> with the Cuyahoga County Recorder at the time of service of the Amended Complaint in this matter was in the amount of $10,994.44."  *Id.*  Accordingly, Plaintiff argues the Court should "deny the Colony's motion for summary judgment as to the amount of its lien totaling $49,585.62 and instead grant the Colony judgment on its recorded lien of $10,994.44 that together with legal fees and maintenance costs total $19,296.37."  *Id.* at 6.

The Colony argues that "the doctrine of *lis pendens* does not operate to bar any portion of the Colony's interest in the Property because the Colony's lien interest was perfected prior to the

22

filing of this foreclosure action, and pursuant to Ohio's Planned Community Act is continuing in nature, subject to automatic subsequent adjustments." (Doc. No. 126 at 7.)

The doctrine of *lis pendens* is found in Ohio Revised Code § 2703.26 and states as follows:

> When a complaint is filed, the action is pending so as to charge a third person with notice of its pendency. While pending, no interest can be acquired by third persons in the subject of the action, as against the plaintiff's title.

As one Ohio court has explained, "*lis pendens* prevents third parties who claim to have 'acquired an interest' in the property, after service and during the pendency of the foreclosure action, from challenging the trial court's judgment." *Bates v. Postulate Invests., L.L.C.*, 176 Ohio App.3d 523, 892 N.E.2d 937 (Ohio App. 8th Dist. 2008) (quoting *Wheeling Corp. v. Columbus & Ohio River RR. Co.,* 147 Ohio App.3d 460, 482, 771 N.E.2d 263 (Ohio App. 10th Dist. 2001)).  As one Ohio court recently explained:

> The general intent and effect of the doctrine of *lis pendens* is to charge third persons with notice of the pendency of an action and to make any interest acquired by such third persons subject to the outcome and judgment or decree of the pending lawsuit. *Barclay*, 2004-Ohio-1217, 2004 WL 503935, at ¶ 10.
>
> {¶ 10} *Lis pendens* is not a substantive right. *Cincinnati Reds*, 150 Ohio App.3d 728, 2002-Ohio-7078, 782 N.E.2d 1225, at ¶ 31. It does not create a lien, but charges the purchaser with notice of the pending action. *Id*. The purpose of *lis pendens* is to protect the plaintiff's interest in the subject property. *Id*. *Lis pendens* does not relate to the power of a court to hear and decide a case on the merits. *ABN AMRO Mtge. Group, Inc. v. Roush,* 10th Dist. No. 04AP–457, 2005-Ohio-1763, 2005 WL 858182, ¶ 49.

*Irwin Mtge. Corp. v. DuPee*, 197 Ohio App.3d 117, 966 N.E.2d 315, 317-318 (Ohio App. 12th Dist. 2012).

The Court agrees with The Colony that the doctrine of *lis pendens* does not bar its lien against the Bratenahl Property.  The Colony recorded its Certificate of Lien on August 20, 2013.

The original Complaint in this matter was filed on May 22, 2013 against Zovkic and his

company, ZMS Machining, raising claims of fraud and action on account.  However, Plaintiff

did not raise its foreclosure claims or name The Colony as a defendant until it filed its First

Amended Complaint on February 12, 2014.   Therefore, The Colony's Certificate of Lien

predated the filing of the foreclosure claims in this action.  Moreover, as The Colony correctly

notes, Ohio Revised Code § 5312.12 provides that its lien "is a continuing lien upon the lot

against which each assessment or charge is made, subject to automatic subsequent adjustments

reflecting any additional unpaid interest, administrative late fees, enforcement assessments,

collection costs, attorney's fees, paralegal fees, and court costs."  Ohio Rev. Code § 5312.12.

Indeed, the Certificate of Lien itself provides that the amount of this lien is "$10,994.44 plus

interest at the statutory rate from June 1, 2012, collection costs, attorney's fees that are

chargeable against the property and that remain unpaid 10 days after any portion has become due

and payable **as well as any unpaid assessments occurring hereafter until this lien is**

**satisfied**." *Id.* (emphasis added).  Thus, Plaintiff was on notice when it filed its Amended

Complaint that The Colony's Certificate of Lien was recorded and perfected as to all amounts

currently due and owing as well as any unpaid assessments occurring after the filing date of the

Certificate of Lien.  Finally, the Court notes that counsel for Plaintiff also conceded that no

genuine issues of material fact remain with respect to this issue during the in-person conference

with this Court on November 5, 2014.

Therefore, the Court finds the doctrine of *lis pendens* does not bar The Colony's lien as to the

Bratenahl Property.

Accordingly, and for all the reasons set forth above, the Court finds there is no genuine

issue of material fact that The Colony has a valid lien on the Bratenahl Property for outstanding and unpaid assessments and other charges of Defendant Zovkic in the amount of $49,589.62, plus interest at the statutory rate from August 22, 2014 plus costs of collection, and attorney's fees until the debt is satisfied.  Accordingly, The Colony's motion for summary judgment (Doc. No. 119) is granted.

**IV.     Priority of Liens**

In their motions, the moving parties ask this Court to determine the priority of the liens against the Bratenahl Property.  Ohio Revised Code § 5301.23(A) provides as follows:

> (A) All properly executed mortgages shall be recorded in the office of the county recorder of the county in which the mortgaged premises are situated and shall take effect at the time they are delivered to the recorder for record. If two or more mortgages pertaining to the same premises are presented for record on the same day, they shall take effect in the order of their presentation. The first mortgage presented shall be the first recorded, and the first mortgage recorded shall have preference.

Pursuant to this statute, "the general rule is that 'the first mortgage recorded shall have preference' over subsequently recorded mortgages."  *IndyMac Bank, FSB v. Bridges*, 169 Ohio App.3d 389, 393, 863 N.E.2d 185 (Ohio App. 10th Dist. 2006) (quoting *Washington Mut. Bank v. Loveland*, 2005 WL 737403 at ¶ 10 (Ohio App. 10th Dist. 2005)).  *See also Alterna Mortg. Income Fund, LLC v. GS Holdings-Brookside, Ltd.*, 2013 WL 5923144 at * 5 (S.D. Ohio Nov. 4, 2013); *Homes Sales, Inc. of Delaware v. Burris*, 2011 WL 2623673 at * 2 (Ohio App. 4th Dist. June 28, 2011); *DB Midwest LLC v. Pataskala Sixteen, LLC*, 2008 WL 5330476 at * 4 (Ohio App. 3rd Dist. Dec. 22, 2008).  Or, as one court put it, "Ohio mortgage priority law can be summarized as 'first in time, first in right.'" *Alterna Mortg Income Fund*, 2013 WL 5923144 at * 5 (quoting *Home Sales, Inc.*, 2011 WL 2623673 at * 2).

Here, the record reflects that: (1) the Huntington Mortgage was recorded on March 21, 1997 (Hibburt-Gomulinski Aff. at ¶ 7 and Exh. A-5); (2) the St. Paul Mortgage was recorded on April 17, 1997 (Vardeman Aff. at ¶ 5; Doc. No. 43 at Exh. L); and, (3) The Colony's Certificate of Lien was recorded on August 20, 2013 (Doc. No. 119-2.)  Based on the above, the Court finds the Huntington Mortgage was recorded first in time and, therefore, has priority over the St. Paul Mortgage and The Colony Certificate of Lien.  The Court further finds the St. Paul Mortgage was the next lien to be properly recorded and, therefore, has priority over The Colony Certificate of Lien.

The Court notes that the Updated Final Judicial Report (Doc. No. 137) filed in this matter indicates that the State of Ohio has several liens on the Bratenahl Property for unpaid taxes. Specifically, the State of Ohio had the following liens recorded at the time of the filing of the instant foreclosure action:

> (1) Certificate of Judgment in favor of the State of Ohio against Vlado Zovkic, 5 Colony Lane, Bratenahl, OH 44108 in Cuyahoga County Common Pleas court Case No. ST017140502, in the face amount of $8, 291.44, for the record on February 21, 2007, in Cuyahoga County Judgment Docket No. JL-07-285513, Account No. 4884, and Serial No. 02200616731315.

> (2) Certificate of Judgment in favor of the State of Ohio against Vlado Zovkic, 5 Colony Lane, Bratenahl, OH 44108 in Cuyahoga County Common Pleas Court Case NO. ST 10216155, in the face amount of $4,750.04, filed for record on April 7, 2010, Account No. 4884, and Serial No. 0220907886552.

(Doc. No. 137-1 at 3.)

With respect to these liens, Plaintiff has submitted an Affidavit from Donn Rosenblum, a Principal Attorney with the Office of the Attorney General of Ohio in the Collections Enforcement Section.  (Doc. No. 138-1 at ¶ 1.)  Therein, Mr. Rosenblum avers as follows:

26

6.     I spoke with [Plaintiff's counsel] on September 9, 2014 and advised that the State of Ohio did not need to intervene or be added as an interested party to the foreclosure action if it is agreed that the above listed State of Ohio judgment liens were protected and paid from available sales proceeds in the priority in which the State of Ohio's liens appear in the judicial title reports filed with the Court. [Plaintiff's counsel] advised that the proposed order submitted to the Court described that the above listed State of Ohio judgment liens were subject to payment in the priority in which the same appear in the judicial title reports filed with the Court.

*Id.* at ¶ 6.  Based on the above, the Court finds the State of Ohio need not have been joined as a party and, further, that the State of Ohio liens noted above are subject to payment in the priority listed in the Updated Final Judicial Report.[13]  (Doc. No. 137-1.)

The Updated Final Judicial Report also indicates that the United States recorded a federal tax lien against the Bratenahl Property in the amount of $139,044.11 (hereinafter "IRS tax lien.") (Doc. No. 137-1 at 4.)  According to that Report, this lien was recorded on March 19, 2014, approximately five weeks after the instant foreclosure action was commenced with the filing of the First Amended Complaint on February 12, 2014.  *Id.*  The IRS tax lien did not appear in the Preliminary Judicial Report (which was filed in the instant action on February 4, 2014), as the lien had not yet been recorded when that Report was obtained.  (Doc. No. 41-2.)  The lien was not identified until Plaintiff obtained a Final Judicial Report, which was filed in this action on

---

[13]  The Court notes that the Updated Final Judicial Report also reflects the fact that, subsequent to the commencement of the instant foreclosure action, the State of Ohio recorded five additional liens against the Bratenahl Property in the amounts of $29,182.22; $22,875.97; $20,793.40; $18,891.84; and, $8,249.79.  (Doc. No. 137-1 at 4-5.)  In his Affidavit, Mr. Rosenblum avers that "[t]he updated final judicial report, dated December 16, 2014, reflects that the additional State of Ohio liens [noted above] are barred by *Lis Pendens* and are shown for information only.  The State of Ohio acknowledges that these liens are subject to *Lis Pendens*." (Doc. No. 138-1 at ¶ 8.)  In light of Mr. Rosenblum's Affidavit, and in the absence of any objection from any of the named parties, the Court finds these additional State of Ohio liens are barred by *lis pendens.*

27

September 15, 2014.  (Doc. No. 115.)

Plaintiff maintains that, pursuant to 26 U.S.C. § 7425, the IRS tax lien is barred by *lis pendens* because it was not recorded until after the Amended Complaint was filed and served.  (Doc. No. 144.)  At the Court's request, Plaintiff sent a letter to Internal Revenue Service on December 22, 2014, notifying it of both the instant foreclosure action and Plaintiff's position that the IRS tax lien at issue is barred by *lis pendens* and the United States is therefore not a proper party to this action.  (Doc. No. 134-1.)  The United States has not responded to Plaintiff's letter, nor has it filed anything in this Court indicating that it holds a contrary view.  Thus, the Court finds the IRS tax lien is barred by *lis pendens*.

Finally, the Court further notes that Cuyahoga County has filed an Answer in this matter asserting an interest in the Bratenahl Property for any taxes, accrued taxes, assessments, and penalties, including sewer and water charges.  (Doc. No. 68.)  The Court finds that the lien interests of Huntington, Plaintiff, the State of Ohio and The Colony are junior in priority to any lien held by Cuyahoga County to secure the payment of real estate taxes and assessments, if any.  All amounts payable under Ohio Revised Code § 323.47 shall be paid from the proceeds of the sale before any distribution is made to other lien holders.

## V.    Conclusion

Accordingly, and for all the reasons set forth above, the Court finds as follows:

(1) Huntington's Motion for Summary Judgment on its foreclosure cross and counter claims (Doc. No. 117) is GRANTED.

(2) Plaintiff NCUAB's Motion for Summary Judgment on Counts 13 and 14 of the Amended Complaint (Doc. No. 118) is GRANTED.

(3) The Colony's Motion for Summary Judgment (Doc. No. 119) is GRANTED.

The Court further finds that the lien interests of Cuyahoga County in any taxes, accrued taxes, assessments, and penalties, including sewer and water charges, with respect to the Bratenahl Property are senior to the lien interests of Huntington, Plaintiff, The Colony, and the State of Ohio.  Finally, the Court finds that Huntington, Plaintiff, The Colony, and the State of Ohio are entitled to payment on their respective liens on the Bratenahl Property in the priority in which they appear in the Updated Final Judicial Report.  (Doc. No. 137-1.)

IT IS SO ORDERED.


/s/ Greg White
U.S. Magistrate Judge

Date:  February 4, 2015